Filed 11/23/21  In re H.L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re H.L., a Person Coming Under the Juvenile Court Law. | B311601 (Los Angeles County Super. Ct. No. DK21764A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Conditionally affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, David Michael Miller, Deputy County Counsel for Plaintiff and Respondent.

_____

J.B. (mother) appeals from the order terminating parental rights to her child, H.L. (minor), under Welfare and Institutions Code section 366.26.[1]  Mother contends the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).  We conditionally affirm, and remand for ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the sole issue raised in mother's appeal is ICWA compliance, we focus primarily on the facts and procedural background relevant to that issue.[2]

Minor was taken into Department custody on February 19, 2017, after she disclosed mother had been hitting her with an

_____

[1] Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] Minor's alleged father, G.D., is deceased and is not a party to this appeal.

2

extension cord, leaving marks.[3]  Ten years old at the time, minor told the investigating social worker she would like to reside with her "Aunt JJ" who lives in St. Louis.  Minor did not have the relative's full name or contact information.  According to the Department's detention report, the social worker attempted to reach mother by phone the day the child was taken into custody, and left mother a message that the child was at the police station.  Mother called the social worker back the next day, but mother refused to provide even basic identifying information and terminated the attempted interview by disconnecting the call.  The social worker attempted a visit to mother's address that same day, but no one answered the door.  The detention report noted, "[t]here were no relatives or parent to interview as to the status of [American Indian] heritage at the time of detention or later during the investigation."  Minor remained in foster care for the next year and a half until she was placed with her maternal great aunt Melissa L. in St. Louis, Missouri, in September 2018.

Mother appeared at the February 23, 2017 detention hearing and filed a Judicial Council form titled "Parental Notification of Indian Status (ICWA-020)" stating she may have Indian ancestry through maternal great-grandmother and maternal great-grandfather, and that maternal grandmother would know the tribe.  The court questioned mother, and mother told the court maternal grandmother's name, and that maternal grandmother lived in Minnesota and mother could provide maternal grandmother's new telephone number because she had

---

[3] The juvenile court declared minor to be a dependent described under section 300, subdivisions (a) and (b), based on mother's physical abuse of minor.  Mother was arrested for inflicting corporal injury on a child, and the criminal court issued a restraining order protecting minor from mother.

it in an email. Mother stated she needed to call maternal grandmother because "both my grandparents, which is her parents, were full blooded Indian." The court found there was no reason to know that minor was an Indian child,[4] but directed the Department to investigate further and instructed mother to keep the Department, her attorney, and the court apprised of any new information relating to minor's ICWA status.

In June 2017, the court reiterated its order to interview the maternal grandmother regarding ICWA. The social worker followed up on July 7, 2017, and maternal grandmother stated she had no Indian ancestry. In a subsequent follow up, on August 11, 2017, maternal grandmother again denied having any Indian ancestry, and also stated that the biological maternal grandfather, who was never involved in mother's life, had no Indian ancestry.

At the adjudication hearing on August 17, 2017, mother and her counsel clarified mother's claim of Indian ancestry. According to mother, her mother (maternal grandmother) would not release information about her biological father (biological maternal grandfather), but that mother's great-grandparents told mother's grandparents that biological maternal grandfather was a "full-blooded Indian." Based on the evidence before it, the court found there was no reason to know minor was an Indian child. At county counsel's prompting, the court advised mother to continue investigating and to provide any additional information to the social worker.

---

[4] All the Department's subsequent review reports reference this finding, stating "On 2/23/17, the Court found that the Indian Child Welfare Act does not apply."

4

On Friday October 13, 2017, mother and maternal grandmother separately informed the social worker that a family member had passed away in Missouri, and asked for minor to be present at the funeral, which was scheduled to take place that weekend. Mother wanted minor to be able to say goodbye to her favorite uncle. According to the social worker, there was not enough time to arrange minor's travel, which would need court approval. By November 2017, mother had only made very limited contact with the social worker, had yet to enroll in services, and had not yet arranged to visit minor.

In a January 2018 six-month review report, the Department reported that Melissa (minor's maternal great aunt in St. Louis, Missouri) and her sister wanted to seek joint legal guardianship of minor. Minor confirmed that she was speaking with Melissa on a weekly basis, and that she had previously lived with Melissa. The Department asked the court to start the process under the Interstate Compact on Placement of Children (ICPC; Fam. Code, § 7900 et seq.) for placing minor with Melissa. At the six-month review hearing in February 2018, the court ordered an ICPC initiated for the state of Missouri.

The social worker contacted Melissa in early March 2018 to discuss placement, and the 12-month review report advised the court of additional requirements for the Missouri ICPC request. There is nothing in the 12-month review report indicating that anyone from the Department asked Melissa or anyone else about mother's claim of Indian ancestry. In May 2018, the court terminated mother's reunification services.

In August 2018 the Missouri Department of Social Services prepared a relative home assessment, evaluating Melissa and her home. The assessment was positive, and included the following

observations: Melissa's parents (minor's great grandparents) died in 2009 and 2010. Melissa believed she had a good relationship with her family members, but would also maintain appropriate boundaries to ensure minor's safety. Melissa was "heavily involved in the planning of family reunions and other family functions where the child will be around extended family members." The ICPC was approved in August 2018, and the Department contacted Melissa to explain the rights and responsibilities of adoption. The Department recommended the court sign an order for an adoption home study for Melissa. In September 2018, the court approved minor's placement with Melissa.

In February 2019, Melissa informed the social worker that maternal grandmother told her that minor's birth father had recently died. The Department confirmed this information through other sources. Minor was having regular visits with maternal relatives in Missouri, and sporadic monitored phone contact with maternal grandmother. Shortly before a March 2019 review hearing, the Department submitted a report stating that a Department social worker remained in regular contact with minor and Melissa as a support and advocate.

The Department's February 2021 supplemental section 366.26 report states, "On 2/23/17, the Court found that the Indian Child Welfare Act does not apply. . . ." At the section 366.26 hearing on February 17, 2021, the juvenile court terminated mother's parental rights as to minor; it made no express ICWA findings on the record. Mother filed a timely notice of appeal.

**DISCUSSION**

*ICWA requirements and standard of review*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 [California law "incorporates and enhances ICWA's requirements"].) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

The court and the Department have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2020)), California statutes, and rules of court. (*In re T.G.*

7

(2020) 58 Cal.App.5th 275, 290–291 (*In re T.G.*).) Here, we apply the federal and state statutes in effect in February 2021, when the section 366.26 hearing took place. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

The Department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required. (§224.2, subd. (e); *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.) Effective September 18, 2020, section 224.2, subdivision (e)(1), explains that "reason to believe" exists "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." Further inquiry may include interviewing parents and extended family members to obtain information such as the names of the child's "biological parents, grandparents, and great-grandparents, . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.2, subd. (e)(2)(A); 224.3, subd.

8

(a)(5)(C); Cal. Rules of Court, rule 5.481(a)(4)(A).) The agency engaging in further inquiry may also need to contact the Bureau of Indian Affairs, the State Department of Social Services, and any tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subds. (e)(2)(B) & (e)(2)(C); Cal. Rules of Court, rule 5.481(a)(4)(B)&(C).)

If the Department's further inquiry efforts result in information that would give the court or the Department "reason to know" that the child is an Indian child under ICWA, then the relevant tribes must be given notice of the proceedings. (25 U.S.C. § 1912, subd. (a); §224.3, subd. (a); §224.2, subd. (d) [describing circumstances where there is "reason to know" a child is an Indian child].)

On undisputed facts, we make an independent determination about whether ICWA's requirements have been satisfied. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*).) We review the juvenile court's ICWA findings for substantial evidence, and the appellant bears the burden of showing insufficient evidence to support the ICWA finding. (*Ibid.*)

*Inquiry duties under ICWA*

Mother contends the Department failed to satisfy its duties of initial and further inquiry under section 224.2, subdivisions (a), (b), and (e), because it did not ask maternal grandmother for any contact information for biological maternal grandfather or his family members, nor did it ask Melissa, the child's maternal great aunt, about her knowledge of minor's possible Indian ancestry. She argues that absent evidence that the Department

9

attempted to follow up with maternal grandmother or ask Melissa about mother's claim of Indian ancestry, the court's implied "no ICWA" finding at the section 366.26 hearing on February 17, 2021 was in error. The Department counters that there was substantial evidence to support the court's determination that ICWA was inapplicable, and even if mother's statements warranted additional inquiry, mother has not demonstrated prejudicial error. We conclude that the record lacks substantial evidence of a meaningful inquiry following mother's clarification about her claim of Indian ancestry, and so the court's later reliance on its implied ICWA finding was in error.

1. Initial inquiry

We first address mother's contention that the juvenile court and the Department failed to satisfy ICWA's "initial inquiry" requirement when they failed to ask Melissa if she had any information about minor's possible Indian ancestry. Because there is no evidence the Department was in contact with Melissa until sometime after the six-month review hearing, mother's initial inquiry argument is not well taken. "[The] duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (§ 224.2, subds. (a)–(c); [Citation.]" (*In re T.G., supra,* 58 Cal.App.5th at p. 290.) Here, as substantiated in the detention report, there were no individuals available with any knowledge of minor's Indian ancestry. Later, after mother completed and filed an ICWA-020 form at the detention hearing, the court questioned

10

mother about her claim of Indian ancestry and ordered the Department conduct further inquiry by contacting maternal grandmother, the person identified by mother as having additional information. On June 28, 2017, the court again ordered the Department to follow up with maternal grandmother, which the department did. The juvenile court, therefore, met ICWA's initial inquiry requirements. (*In re T.G., supra*, 58 Cal.App.5th at p. 293 [finding the juvenile court "fulfilled its initial obligation to ask about" "possible Indian ancestry" when mother was asked about her Indian ancestry at the detention hearing and filed an ICWA-020 form at that time].)

### 2. Further inquiry

Mother also contends that under the duty of further inquiry, the Department inadequately investigated mother's claim that her Indian ancestry was based on her biological father, rather than her adoptive father. Mother argues that the Department should have asked maternal grandmother if she had contact information for the biological maternal grandfather or any of his extended family, and that the Department should have asked Melissa if she had any information relevant to mother's claim.

The Department argues that mother's generalized assertion of Indian ancestry without identifying any tribe or suggesting tribal membership was insufficient to trigger the duty of further inquiry. The Department relies on *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*), which held statements of Indian ancestry alone, without further indication the child was an "Indian child" within the meaning of the specific ICWA

11

definition of that term, were insufficient to trigger the duty of inquiry. (*Id.* at p. 889.) However, we believe the nature and quality of information in this case was sufficient to trigger the duty of further inquiry. (See, e.g., *In re T.G., supra,* 58 Cal.App.5th at pp. 294–295.)

The Department points to the maternal grandmother's denial of any Indian ancestry as substantial evidence that it complied with the duty of further inquiry under ICWA. The Department argues that mother only identified maternal grandmother and great-grandparents as sources of information, and since the great grandparents were no longer living and maternal grandmother had already denied that maternal biological grandfather had any Indian ancestry, the duty of further inquiry was satisfied.

The Department has an obligation under its duty of further inquiry to contact "any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (Welf. & Inst. Code § 224.2, subd. (e)(2)(B); see *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"].) If we were to only consider the information provided by mother at the detention hearing, we might agree with the Department that it had satisfied its duty of further inquiry when it contacted maternal grandmother, who denied any Indian ancestry for herself and for biological maternal grandfather. However, mother subsequently clarified that according to her grandparents (maternal great-grandparents), biological maternal grandfather was a full-blooded Indian, but maternal

grandmother was unwilling to divulge to mother information about maternal biological grandfather. The Department remained in contact with both maternal grandmother and maternal great aunt Melissa well past mother's clarification, but there is no evidence that anyone asked either relative for any additional information about biological maternal grandfather. This absence of any effort to gather information stands in contrast to other cases where reviewing courts found the duty of further inquiry satisfied because the record contained evidence of a meaningful inquiry into the possibility that a minor was an Indian child. (See, e.g., *In re D.F., supra,* 55 Cal.App.5th at pp. 569–570 [agency's "repeated efforts to gather information concerning maternal ancestry," including interviewing grandparents and other family members, provided substantial evidence of further inquiry]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1046–1047, 1052–1054 (*In re D.S.*) [agency detailed the efforts by minor's aunt (who was also minor's caregiver) to determine whether there was any chance of tribal membership, and contacted multiple tribes with no success in determining minor's eligibility for tribal membership].) Acknowledging that the Department "is not required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S., supra,* 46 Cal.App.5th at p. 1053), we still conclude that without any evidence that the Department asked maternal grandmother and Melissa for any information relevant to mother's claim that her biological father was a full-blooded Indian, the court erred in finding ICWA inapplicable.

*Prejudicial Error*

Although it is typically the appellant's burden to demonstrate prejudice, when the silent record is caused by the Department's and the court's failure to make the appropriate inquiries, we cannot find harmless error. (*In re N.G.* (2018) 27 Cal.App.5th 474, 484 [when the record is silent as to whether the Department asked the mother or other maternal relatives whether minor may have maternal Indian ancestry, ICWA error was necessarily prejudicial]; *In re K.R., supra,* 20 Cal.App.5th at p. 708 [appellate review of ICWA compliance "should not be derailed simply because the parent is unable to produce an adequate record"]; but see *In re A.C.* (2021) 65 Cal.App.5th 1060, 1071–1073 [finding ICWA error harmless because father never claimed Indian ancestry].) On a record that contains no evidence that the Department conducted any additional investigation after mother gave additional detail at the August 17, 2017 adjudication hearing, we cannot know within any degree of reasonable probability whether, had the Department made the requisite effort to clarify the discrepancy between mother's and maternal grandmother's conflicting claims, it would have discovered information necessitating further interviews or notice to one or more Indian tribes. Accordingly, remand is required for the Department and the court to document additional investigative efforts.

## DISPOSITION

The juvenile court's order terminating parental rights under section 366.26 is conditionally affirmed.  The case is remanded to the juvenile court to order the Department to ask maternal grandmother and maternal great aunt Melissa whether they have any information relevant to mother's claim that H.L.'s maternal biological grandfather had Indian ancestry and to report on the results of the Department's investigation.  Based on the information presented, if the juvenile court determines that no additional inquiry or notice to tribes is necessary, the termination of mother's parental rights is affirmed.  If additional inquiry or notice is warranted, the court shall make orders consistent with ensuring compliance with ICWA and related California law.


MOOR, J.


We concur:



BAKER, Acting P.J.



KIM, J.